ALITO, Circuit Judge,
concurring in part and dissenting in part.
I write separately for two reasons. First, I would hold, based on the undisputed facts of this case, that the university’s suspension of Homar without pay and without a hearing did not violate the principles of procedural due process as interpreted by the Supreme Court. I thus dissent from section III.A of the majority’s opinion. Second, although I do not disagree with the majority’s decision to remand the substantive due process question to the district court, I wish to set forth my own views on that issue.
I.
A. Due process does not always require a pre-suspension hearing. See,, e.g., FDIC v. Mallen, 486 U.S. 230, 240-41, 108 S.Ct. 1780, 1787-88, 100 L.Ed.2d 265 (1988); Barry v. Barchi 443 U.S. 55, 63-66, 99 S.Ct. 2642, 2648-50, 61 L.Ed.2d 365 (1979). In Mallen, the Supreme Court observed that “[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.” Id. at 240, 108 S.Ct. at 1787-88 (citations omitted); see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (“[T]he timing and nature of the required hearing “will depend on appropriate accommodation of the competing interests involved.’ These include the importance of the private interest and the length or finality of the deprivation, the likelihood of governmental error, and the magnitude of the governmental interests involved.”) (citations and footnote omitted). In my view, this exception should apply here. See, e.g., Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1562 (10th Cir.1992), aff'd as modified on other ground, 995 F.2d 992 (10th Cir.1993) (en banc).
Under the particular circumstances of this ease, a pre-suspension hearing was not, in my view, essential. Within a few hours of the August 26, 1992, drug raid that resulted in Homar’s arrest, the university learned that Homar had been charged with possession of marijuana, possession with intent to deliver marijuana, and criminal conspiracy. Homar did not report to work on August 26 for his 4:00 p.m. to midnight shift. The next day, Homar called his police chief to say that he had been arrested and to ask whether he was suspended. Homar was informed that he was suspended, and this was confirmed by letter delivered the same day.[1]
I do not think that the university violated Homar’s right to procedural due process when it suspended him from his position as a campus police officer after learning that he had been arrested and charged with drug violations. There was probable cause to support the criminal charges and hence a substantial assurance that the deprivation was not baseless or unwarranted. The university was certainly entitled to take the position that Homar could not be permitted to work as a campus police officer with such charges outstanding, and there was thus, as the majority concedes, a compelling government interest present. And the university needed to act promptly. The majority admits all of this but finds that the university had to suspend Homar with pay. I find no requirement that in such circumstances a public employer must pay its suspended employees.
B. In reaching its conclusion to the contrary, the majority declares that “a governmental employer may not suspend an employee without pay unless that suspension is preceded by some kind of pre-suspension hearing.” Majority Opinion, Typescript at 1016. The majority essentially announces a blanket rule that a public employer that *1024 wishes to suspend an employee — even an employee in a public-safety position who has been charged with multiple felonies — must either provide a pre-suspension hearing or suspend the employee with pay. This holding is based on one sentence of dictum from Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 544-45, 105 S.Ct. 1487, 1494-95, 84 L.Ed.2d 494 (1985), the Eleventh Circuit’s reliance on that dictum in Everett v. Napper, 833 F.2d 1507, 1512 (11th Cir.1987), and this court’s opinion in Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064 (3d Cir.1990). These bases do not, in my view, withstand scrutiny.
'With regard to Loudermill, I note that the Supreme Court there expressly recognized that “[tjhere-are, of course, some situations in which a postdeprivation hearing will satisfy due process requirements.” Loudermill, 470 U.S. at 542 n. 7, 105 S.Ct. at 1493 n. 7 (citations omitted). It is of course true, as the Court later notes, that an employer can avoid any due process problems associated with keeping a dangerous employee on the job by suspending the employee with pay, id. at 544-45, 105 S.Ct. at 1494-95, “for then there is not a deprivation.” Bailey v. Board of County Commissioners of Alachua County, 956 F.2d 1112, 1124 n. 13 (11th Cir.), cert. denied, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). But as the Federal Circuit has explained, this “is merely descriptive, not normative. We agree that in the instant case, the government could have suspended Homar with pay. Nevertheless, we cannot read Loudermill as holding that the government must suspend him with pay.” Engdahl v. Department of Navy, 900 F.2d 1572, 1578 (Fed.Cir.1990). I agree.
The Eleventh Circuit’s decision in Everett, which was issued before the Supreme Court’s decision in Mallen, simply relies on the Loudermill dictum. Numerous courts of.appeals have reached a contrary conclusion regarding the import of Loudermill, particularly after Mallen. See Jones v. City of Gary, 57 F.3d 1.435, 1441-45 (7th Cir.1995) (no pre-suspension hearing required where firefighter was suspended without pay; plaintiffs property interests were adequately protected by post-deprivation hearing); id. at 1445-46 (Ripple, J., concurring) (“there are circumstances in which the need for swift action on the part of those who exercise governmental authority and responsibility for the safety and security of others can justify the elimination or truncation of even the bare-bones pretermination hearing required by Loudermill ”) (citations omitted); Chaney v. Suburban Bus Div. of the Regional Transp. Auth., 52 F.3d 623, 628 (7th Cir.1995) (plaintiff bus driver suspended without pay after bus hit and injured pedestrian; no pre-suspension hearing necessary as employer’s interests “clearly outweigh[ed]”' those of plaintiff); Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1562 (10th Cir.1992) (court discussed Loudermill but applied the Mallen exception where a teacher was suspended without pay and without a hearing after the school learned that the teacher had been arrested on drug charges; court stated that “the substantiated knowledge that a teacher had been arrested for drug sales raised a substantial government interest justifying immediate suspension without pay”), aff'd as modified on other ground, 995 F.2d 992 (10th Cir.1993) (en banc); Strong v. Board of Educ. of Uniondale Union Free School Dist., 902 F.2d 208, 212 (2d Cir.) (citing Loudermill and Mallen, court concluded that, on balance, no pre-termination hearing required; court stressed that probable value of hearing was not very great because parties were well aware of each other’s assertions), cert. denied, 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed.2d 208 (1990); see also Richardson v. U.S. Customs Service, 47 F.3d 415, 418-19 (Fed.Cir.1995) (discussing 5 U.S.C. § 7513(b)(1)) (“[A]n indictment for a crime for which a sentence of imprisonment may be imposed will, as a general rule, provide reasonable cause for an agency to believe that the employee has committed such a crime, and, when the nature of the crime alleged relates to the employee’s ability to perform his or her duties, an agency may summarily suspend the employee, without pay, pending the outcome of the criminal proceedings.”) (citations omitted); Bailey v. Board of County Commissioners of Alachua County, 956 F.2d 1112, 1123-24 & n. 13 (11th Cir.) (qualified immunity) (stressing flexibility of standard regarding necessity of pre-deprivation hearing where prison guard was suspended *1025 without pay upon his arrest), cert. denied, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992); Gamble v. Webb, 806 F.2d 1258, 1261 (5th Cir.1986) (relying upon Loudermitt’s statement that “ ‘there are, of course, some situations in which a post-deprivation hearing will satisfy due process,’ ” and concluding, under Logan balancing test, that “the present one is such a situation”) (quoting Loudermitt, 470 U.S. at 542 n. 7, 105 S.Ct. at 1493 n. 7) (brackets omitted). All of these decisions — like the Supreme Court’s procedural due process cases in general and unlike the majority’s blanket rule — reflect a balancing of interests based on the particular circumstances of each case.
I also believe that the majority has misinterpreted our opinion in Bradley. Citing Bradley, 913 F.2d at 1077, the majority states that Bradley implies that suspension without pay and without a pre-suspension hearing always violates due process. Majority Opinion, Typescript at 1016-17. However, on the next page of the Bradley opinion, the panel clearly stated:
We need not decide in this case whether Bradley was entitled to a pre-suspension hearing, as he contends, or whether a post-suspension hearing sufficed. Compare Loudermill, 470 U.S. at 544, 105 S.Ct. at 1494 (because government’s interest in immediate termination of security guard who had lied when seeking employment did not outweigh employee’s interest in retaining employment, pre-termination hearing was required) with FDIC v. Mallen, 486 U.S. 230 [238-42], 108 S.Ct. 1780, 1787-88, 100 L.Ed.2d 265 (1988) (because government had substantial interest in suspending indicted bank official to protect bank and depositors, a post-suspension hearing within a reasonable time was sufficient).
Bradley received no hearing,. either before or after the suspension, and hence if he was suspended, as the record suggests, he was deprived of due process.
913 F.2d at. 1078. In my view, .far from implying anything, the Bradley panel expressly reserved decision on the issue presented in this ease.[2]
I would resolve that issue in this case by following the great weight of federal appellate authority cited above and holding that whether a pre-suspension hearing was required in this particular case requires a balancing of the relevant factors. For the reasons already expressed above, I would hold that in the circumstances of this case, a pre-suspension hearing was not required and that a post-suspension hearing within a reasonable time after the suspension was sufficient. It may be that the university failed to conduct a sufficiently prompt or adequate post-suspension hearing after the criminal charges were dismissed on September 1, 1992, but that is a different question. Moreover, as in Strong, I am not sure how a pre-suspension hearing on -August 26, 1992, would have made any difference. The only fact important to the university’s decision was whether Homar had been arrested and charged. Homar did not dispute this, and in fact confirmed it the next day; Homar was well aware of the reasons for his suspension: As in Strong, the hearing required by the majority would have been “an empty formality.” See Strong, 902 F.2d at 212.
C. I have one final problem with the section of the majority opinion dealing with the need for a pre-suspension hearing. The majority assumes that an important government interest requiring prompt action is what permits an employer to suspend an employee without a pre-suspension hearing but with pay. I think that this is inaccurate. It is my *1026 understanding that a public employer may generally suspend a public employee for cause, with pay, and without a hearing — even absent an emergency situation — because such a suspension does not ordinarily implicate any constitutionally protected property interest. See, e.g., Hicks v. City of Watonga, 942 F.2d 737, 746 n. 4 (10th Cir.1991) (“[N]o property interest was infringed at Mr. Hicks’ first round of hearings when he was suspended and then reprimanded. Mr. Hicks suffered no loss in pay because of the pre-hearing suspension. Suspension with pay does not raise due process concerns.”) (citations omitted); Pitts v. Board of Educ. of U.S.D. 305, Salina, Kansas, 869 F.2d 555, 556 (10th Cir.1989) (same); see also Hardiman v. Jefferson County Bd. of Educ., 709 F.2d 635, 637-38 & n. 2 (11th Cir.1983) (not deciding but questioning whether suspension with pay could ever constitute deprivation of property interest, and opining that “bad-faith” suspension with pay might infringe liberty interest); Koelsch v. Town of Ames-bury, 851 F.Supp. 497, 500 (D.Mass.1994) (“A public employee’s suspension with pay does not implicate a constitutionally protected property interest.”) (citations omitted). Under the majority’s reasoning, the important government interest requiring prompt action is rendered a nullity because it simply allows the employer to do what it could do in a typical non-emergency, for-cause suspension situation, i.e., suspend the employee with pay.
II.
Although I do not disagree with the majority’s determination that a remand is in order on Homar’s substantive due process claim, I write separately to set forth my views on the viability of that claim. I do not think that a plaintiff has a substantive due process claim for a non-legislative deprivation of a state-created property right by a public employer. Moreover, if Homar has a substantive due process claim in this context, it seems to me that he must show that the employer’s actions were not rationally related to a legitimate government interest; mere allegations of bad faith cannot suffice.
A. Neither the Supreme Court nor this court has previously held that a plaintiff has a substantive due process claim for a non-legislative deprivation of a state-created property interest by a public employer. The Eleventh Circuit recently overruled a decade of its own decisions recognizing such claims. McKinney v. Pate, 20 F.3d 1550 (11th Cir.1994) (en bane), cert. denied, — U.S.-, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); see also Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 671 A.2d 567 (1996). Essentially for the reasons stated in McKinney, which I find persuasive, I believe that Ho-mar’s allegations state only procedural due process claims.
In McKinney, the Eleventh Circuit considered the following issue: “whether, under the Fourteenth Amendment, a government employee possessing a state-created property interest in his employment states a substantive due process claim, rather than a procedural due process claim, when he alleges that he was deprived of the employment interest by an arbitrary and capricious non-legislative government action.” Id. at 1553. Sitting en banc, a unanimous Eleventh Circuit answered “no,” and in an effort to bring its cases back into line with Supreme Court precedent, overruled a decade of its prior decisions.[3] The court held that “in non-legislative cases, only procedural due process claims are available to pretextually terminated employees.” Id. at 1560; see also Rivkin, 671 A.2d at 577 (plaintiffs’ purported substantive due process claim “is much closer to a procedural due process claim” in that it “amounts to an allegation that the State failed to furnish an impartial tribunal, which ‘is a matter of procedural, not substantive, due process’ ”) (citations omitted).
Two aspects of the Eleventh Circuit’s opinion in McKinney bear emphasis here. First, the court concluded that allegations of arbitrary and capricious action by governmental employers affecting an individual’s property interest in public employment “will not make *1027 out a substantive due process claim under the jurisprudence of the Supreme Court ... because only procedural issues are implicated.” Id. at 1559 (emphasis in original); see also id. at 1561 (“McKinney’s allegation is procedural: the County failed to provide one-of the elements of procedural due process— an unbiased decisionmaker.”).[4] I agree, as I discuss further below.
Second, crucial to the court’s decision was the distinction between legislative acts and non-legislative or executive acts. Executive acts, such as employment decisions, typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society. Id. at 1557 n. 9. The court criticized its prior decision in Hearn v. City of Gainesville, 688 F.2d 1328 (11th Cir.1982) — its first case to apply substantive due process analysis to an arbitrary termination claim — because “[i]n that case, where a terminated employee challenged an executive act, we cited Nebbia [v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934) ], where a legislative act (to wit, a law) was at issue.” Id. at 1558 n. 14. The court added that “[i]t is imperative that a stricter segregation of these two distinct case-categories be maintained.” Id. The court indicated that rational basis review under the substantive component of the Due Process Clause is appropriate only in the context of challenges to legislative action. Id. at 1557-58 & nn. 9 & 14; see also TRM, Inc. v. United States, 52 F.3d 941, 945 & n. 17 (11th Cir.1995) (applying rational basis review to substantive due process challenge to regulation under Food Stamp Act and noting that “[tjhis standard is not affected by our decision in McKinney ” because “[t]he holding of that case was specifically limited to substantive due process challenges to non-legislative acts”) (citations omitted); Sullivan Properties, Inc. v. City of Winter Springs, 899 F.Supp. 587, 594-96 (M.D.Fla.1995) (considering the impact of McKinney on substantive due process challenges in the area of zoning and the granting of building permits; concluding that there is a “substantive due process cause of action for arbitrary and unreasonable zoning ordinances” but not for “substantive due process claims [challenging] executive acts granting or denying a particular building permit application”).[5] I again agree.
Like the prior decisions in the Eleventh Circuit, a decision allowing Homar to maintain a substantive due process claim based on an allegation of bad faith would elevate Ho-mar’s procedural challenges to substantive due process status. Assuming that there is a factual issue regarding whether defendants acted in bad faith, I question the wisdom of recognizing a substantive due process claim where a university fails to provide adequate procedural due process and where the way in which procedural due process is denied could give rise to an inference of bad faith. This sort of “substantive procedural due process claim” is precisely what troubled both the Eleventh Circuit in McKinney and a unanimous New Jersey Supreme Court in Rivkin, and I would not recognize such a claim. It seems to me that Homar’s claim is clearly procedural and should be recognized as such.
Further, the cases upon which Homar relies essentially derive — as is discussed more fully below — from Pace Resources, Inc. v. Shrewsbury Tp., 808 F.2d 1023 (3d Cir.), cert. denied, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987), and Rogin v. Bensalem Tp., 616 F.2d 680, 689 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), both of which involve challenges to zoning .ordinances and thus challenges to legislative acts. The cases that have applied Pace Resources and Rogin in *1028 challenges to non-legislative acts have, in my view, fallen into the trap identified by the Eleventh Circuit in McKinney. I would not extend them into the public employment setting.
B. Assuming for the sake of argument that there is a substantive due process claim for arbitrary and capricious non-legislative actions by public employers and that Ho-mar’s interest in his position as a campus police officer constituted a “property” interest for substantive due process purposes,[6] I nonetheless conclude that Homar seeks application of the wrong standard in evaluating his claim. Under true rational basis review — which is the most that Homar is entitled to where he is asserting the violation of a non-fundamental, state-created property interest — I think that Homar failed to create a fact issue as to whether the university violated his substantive due process rights.
The appropriateness of summary judgment as to Homar’s substantive due process claim requires consideration of what Homar must show to establish a substantive due process violation. Homar argues that our cases hold that a plaintiff can establish a substantive due process violation by proving that the government’s actions were motivated by bias, bad faith, or improper motive. Homar contends that a public employee who suffers an adverse employment decision may maintain a substantive due process claim against the public employer by showing (1) that the employer’s actions were not rationally related to a legitimate government interest or (2) that the employer’s actions were motivated by (a) bias, (b) bad faith, or (c) improper motive. I do not agree.
First, as I alluded to above, we have never applied this test in the public employment context, and I would not extend this test to this context, whatever its appropriateness in other contexts. Further, it seems to me that the statements in our opinions regarding the nature of rational basis review in substantive due process cases have evolved in a strange and, I think, unintended way. Beginning with unobjectionable descriptions of classical rational basis review, our opinions eventually reached the point of suggesting that a plaintiff can state a substantive due process claim merely by alleging that an individual decision resulting in the deprivation of a property right was taken in bad faith. The Supreme Court has never sanctioned such a broad proposition, and I am confident that this cannot be the law. If a plaintiff like Homar has a substantive due process claim in this context, it seems to me that he must show that the employer’s actions were not rationally related to a legitimate government interest *1029 and that mere allegations of bad faith cannot suffice.
In Pace Resources, Inc. v. Shrewsbury Tp., 808 F.2d 1023 (3d Cir.), cert. denied, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987), plaintiff challenged a municipality’s land use restrictions on substantive due process grounds. In describing the “narrow review” over zoning ordinances, we quoted our prior decision in Rogin v. Bensalem Tp., 616 F.2d 680, 689 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981):
“ The test for determining whether a law comports with substantive due process is whether the law is rationally related to a legitimate state interest. ‘[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.’ ”
808 F.2d at 1034 (quoting Rogin, 616 F.2d at 689) (quoting Williamson v. Lee Optical, 348 U.S. 483, 487-88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955)) (brackets in Rogin). We explained that “[a] plaintiff making a substantive due process claim in federal court has the burden of showing that the regulation is arbitrary or irrational. Thus to state a claim, Pace’s complaint would have to allege facts that would support a finding of arbitrary or irrational legislative action by the Township.” Id. at 1035 (citations omitted). After concluding that “Pace’s complaint fails to make any factual allegations that indicate irrationality” and that “Pace does not present a case involving actions aimed at this developer for reasons unrelated to land use planning,” we concluded that “[bjeeause it appears on the face of the amended complaint that the Township decisionmakers could have had rational reasons for the decisions contested here and because that complaint alleges no facts suggesting arbitrariness, it fails to state a substantive due process claim upon which relief can be granted.” Id. at 1035-36 (citation omitted).
In Bello v. Walker, we noted the rational basis review articulated in Pace Resources, but we focused on the language from Pace stating that the plaintiff there did not allege “actions aimed at this developer for reasons unrelated to land use planning.” Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir.) (citation omitted), cert. denied, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988). We thus distinguished Pace Resources and announced as follows:
We need not define, at this juncture, the outer limits of the showing necessary to demonstrate that a governmental action was arbitrary, irrational, or tainted by improper motive. The plaintiffs in this case presented evidence from which a fact finder could reasonably conclude that certain council members, acting in their capacity as officers of the municipality improperly interfered with the process by which the municipality issued building permits, and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits. These actions can have no relationship to any legitimate governmental objective, and if proven, are sufficient to establish a substantive due process violation actionable under section 1983.
Id. at 1129-30 (footnote omitted).
Next, the panel in Midnight Sessions paraphrased Bello and stated that “a plaintiff may maintain a claim of substantive due process violation upon allegations that the government deliberately and arbitrarily abused its power.” Midnight Sessions, Ltd. v. City of Phil., 945 F.2d 667, 683 (3d Cir.1991) (citation omitted), cert. denied, 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992). “Thus, allegations that the government’s actions in a particular case were motivated by bias, bad faith, or improper motive ... may support a finding of substantive due process violation.” Id. (citing Bello and Pace Resources ).
In Parkway Garage, Inc. v. City of Phil., 5 F.3d 685, 692 (3d Cir.1993), we explained that “[sjubstantive due process protects citizens from arbitrary and irrational acts of government.” Id. at 692 (citing Rogin v. Bensalem Tp., 616 F.2d 680, 689 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 *1030 L.Ed.2d 223 (1981)).[7] We then stated the following test (which is the test quoted by the parties in this case): “A violation of substantive due process rights is proven: (1) if the government’s actions were not rationally related to a legitimate interest; or (2) ‘if the government’s actions in a particular case were in fact motivated by bias, bad faith or improper motive.’” Id. (citation omitted); see also Blanche Road Corp. v. Bensalem Tp., 57 F.3d 253, 263 (3d Cir.), cert. denied, — U.S. -, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995).
From Rogin to Parkway Garage, then, we have moved from inquiring merely whether a legislative act survived pure rational basis review to inquiring whether actions by specific defendants vis-a-vis a specific plaintiff were somehow improper. It seems to me that our cases began looking to governmental conduct that might prove a lack of rational basis, but we have now set forth an entirely separate test for evaluating substantive due process claims that is independent of standard rational basis review. See also Rivkin, 671 A.2d at 576-77 (declining to follow De-Blasio and Bello and stating that “[i]t is a mistake ... to equate the concept of ‘arbitrary and irrational’ governmental land use decisions with the substantive component of the Due Process Clause of the Fourteenth Amendment”). In my view, the court should take the next available opportunity to clarify that the appropriate test is true rational basis review.[8]
If we are to recognize substantive due process claims in the public employment context — which, for the reasons discussed above, I think would be a mistake — then, in my view, we should ask merely whether the plaintiff can show that the employer’s actions were not rationally related to a legitimate government interest. It should not be enough to allege bad faith by a single governmental actor; the overall conduct complained of must be unrelated to any legitimate governmental interest. If this mode of analysis is applied to this case, I think that it is clear that the university’s actions were rationally related to its legitimate interests, and, indeed, Homar does not contend otherwise.
C. In sum, substantive due process applies where there is a fundamental right at stake or legislation is challenged as having no rational relationship to any legitimate government interest. Here, plaintiff suggests no fundamental right within the meaning of the substantive component of the Due Process Clause; nor is plaintiff challenging a legislative act on rational-basis grounds. In my view, then, plaintiff has no substantive due process claim on the undisputed facts presented.[9]
III.
For the foregoing reasons, I respectfully dissent from the majority’s conclusion, set forth in section III.A, that Homar had a right to a hearing prior to his suspension. *1031 Although I join in section IV of the opinion remanding the substantive due process issue to the district court, I do not believe that Homar’s substantive due process claim should survive a motion for summary judgment on remand.

. As I discuss further, infra, given Homar’s immediate admission of his arrest, I am at a loss as to what purpose a pre-suspension hearing would have served in this case. See generally Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (one factor to consider in determining what due process requires is the probable value, if any, of additional procedural safeguards).

. The majority also defends its reliance on Bradley by characterizing the Loudermitt dictum and the Mallen exception as one and the same. See Majority Opinion, Typescript at 1016 & n. 3. I do not agree with this assessment. Loudermitt states that an employer may satisfy due process by suspending an employee with pay. That was not done in Bradley, and so the district court's reliance on the Loudermitt dictum was rightly held to be improper. But defendants in Bradley — like defendants in this case — argued separately that they came within the independent Mallen exception — pursuant to which pay is not required — and that a pre-suspension hearing thus was not necessary. We did not decide whether Mallen excused the need for a pre-sus-pension hearing because Bradley did not receive even a post-suspension hearing. I see nothing "inconsistent” in Bradley, nor do I read Bradley as “necessarily[] reject[ing]” the possible ade•quacy of a post-suspension hearing in circumstances like those here.

. Those prior cases, like the test advocated by Homar, essentially required that a public employee show the deprivation of a property right in public employment for improper, pretextual, or arbitrary and capricious reasons.

. I note that the Supreme Court has never held that a public employee has a substantive due process right to be free from arbitrary or capricious conduct adversely affecting the employee's property interest in that employment.

. See also Kauth v. Hartford Ins. Co. of Illinois, 852 F.2d 951, 956-58 (7th Cir.1988) (plaintiff alleged not that statute or regulation was unconstitutional but that sheriff arbitrarily ignored law in seizing property; court found that "in cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim”) (citations omitted).

. But see, e.g., Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring) ("As the Court correctly points out, respondent's claim to a property right is dubious at best. Even if one assumes the existence of a property right, however, not eveiy such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution.”); DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598-601 (3d Cir.) (“to state a substantive due process claim, a plaintiff must have been deprived of a particular quality of property interest”), cert. denied, — U.S.-, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995); Reich v. Beharry, 883 F.2d 239, 243-44 (3d Cir.1989) ("While, as we have discussed above, it is well settled that state-created property interests, including some contract rights, implicate the protection of the procedural aspect of the due process clause, the issue of whether and when state-created property interests invoke substantive due process concerns has not been decided by the Supreme Court and is subject to varying analyses and conclusions by the lower courts.... [We have] acknowledged that what constitutes a property interest in the procedural due process context might not constitute one in that of substantive due process.... [I]n this circuit, at least, not all property interests worthy of procedural due process protection are protected by the concept of substantive due process.”) (citations omitted); Ransom v. Marrazzo, 848 F.2d 398, 411-12 (3d Cir.1988) ("Substantive due process refers to and protects federal rights. The provision of water and sewer services, whether by a municipality or by a private utility company, is not, however, a federally protected right. The legal fact that, once a municipality (or, for that matter, a private utility company) establishes a utility for its citizens, a citizen’s expectation of receiving that service rises to the level of a property interest cognizable under the Due Process Clause, merely brings that expectation within the compass of the Fourteenth Amendment's procedural protections.... It does not transform that expectation into a substantive guarantee against the state in any circumstance.”) (citations omitted).

. Rogin presents, in my view, the proper scope of substantive due process review. There, we found that the township “has a legitimate interest in controlling population growth and density and the zoning amendments are a rational and reasonable means to accomplish that purpose. Therefore, the zoning amendments were not arbitrary or irrational....” Id. I find nothing in Rogin to support the broad proposition that substantive due process protects citizens in general from arbitrary and irrational acts of government.

. I note that some district court opinions in this circuit have recognized the mixed signals sent by this court. For example, in Ersek v. Township of Springfield, 822 F.Supp. 218 (E.D.Pa.1993), a public employment case, the court opined that Bello and Pace Resources do not apply outside of the building and zoning permit contexts. Id. at 221 (dicta).

.I also note the Supreme Court’s consistent instruction that the substantive component of the Due Process Clause be narrowly construed. E.g., Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchart-ered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.”) (citation omitted); see also Fagan v. City of Vineland, 22 F.3d 1296, 1306 n. 6 (3d Cir.1994) (en banc) ("We cannot ignore the Supreme Court's repeated warnings against an overly generous interpretation of the substantive component of the Due Process Clause.”).